THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE

| IN THE MATTER OF THE SEARCH OF: | ) | FILED UNDER SEAL |
|---|---|---|
| THE CELLULAR TELEPHONE ASSIGNED CALL NUMBER 423-637-4994 INTERNATIONAL MOBILE SUBSCRIBER IDENTIFIER 311480616554096 (TT-6) | ) ) ) ) ) | Case No. 1:21-mj-37 |

AFFIDAVIT IN SUPPORT OF
AN APPLICATION FOR A SEARCH WARRANT

I, William B. Johnson, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number 1-423-637-4994 with International Mobile Subscriber Identifier 311480616554096 with listed subscriber as Crystal MILLHOLLAND at 3505 Anderson Pike, Signal Mountain, Tennessee, utilized by **Crystal Gayle GENSEMER** ("**Target Cell Phone #6**"), whose service provider is Verizon Wireless, a wireless telephone service provider whose legal compliance center is headquartered at 180 Washington Valley Road, Bedminster, NJ, 07921. **Target Cell Phone #6/TT6** is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2. Because this warrant seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), the requested warrant is designed to also comply with the Pen Register Act. *See* 18 U.S.C. §§ 3121-3127. The requested warrant therefore includes all the information required to be included in an order pursuant to that statute. *See* 18 U.S.C. § 3123(b)(1).

3. I am a Law Enforcement Officer with the Hamilton County Sheriff's Office Sworn in by the Sheriff of Hamilton County Tennessee. I have been so employed for the past 11 years. I am currently now assigned to the Drug Enforcement Administration ("DEA") as a Task Force Officer ("TFO"). In connection with my official DEA duties, I investigate criminal violations of the federal narcotics laws, including but not limited to, Title 21, United States Code, Sections 841, 843, and 846. I have also been involved in various types of electronic surveillance, the debriefing of defendants, witnesses, informants, and others who have knowledge of narcotics trafficking and of the laundering and concealing of proceeds of drug trafficking. I have had specialized training in and experience in the enforcement of laws concerning the activities of narcotics traffickers, including ten weeks of basic training in Nashville, Tennessee, as well as periodic refresher training offered by DEA, ROCIC, IPTM and other law enforcement entities. I am currently assigned to the DEA Chattanooga Resident Office. My current assignment involves the investigation of high-level drug trafficking organizations in Tennessee, Georgia and elsewhere.

4. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

5. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of Title 21, United States Code, Sections 841(a)(1), 846, and 843(b) have been committed, are being committed, and will be committed by **Crystal Gayle GENSEMER**. There is also probable cause to believe that the location information described in Attachment B will constitute evidence of these criminal violations and will lead to the identification of individuals who are engaged in the commission of these offenses.

Page **2** of **11**

Case 1:21-mj-00037-CHS   Document 5   Filed 03/03/21   Page 2 of 14   PageID #: 10

6. The court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated, *see* 18 U.S.C. § 2711(3)(A)(i).

**PROBABLE CAUSE**

7. The United States, including the Drug Enforcement Administration, is conducting a criminal investigation of Bruce SUTTON, Crystal GENSEMER, Vincent Curtis LEE, Reggie HELTON, and others regarding possible violations of Title 21, United States Code, Sections 841(a)(1), 846, and 843(b). The investigation began in June 2020 in coordination with the Hamilton County Sheriff's Office Narcotics and Special Operations Unit (HCSO) and Tennessee Bureau of Investigation (TBI).

*Location Information Warrant for TT-3, utilized by GENSEMER*

8. Between August and October of 2020, law enforcement reviewed recorded jail telephone calls associated with GENSEMER and other co-conspirators who were incarcerated in Hamilton County, Tennessee. During these calls it was apparent that Crystal GENSEMER had begun to travel to Atlanta, Georgia, to purchase methamphetamine to distribute in Hamilton County, Tennessee. GENSEMER utilized phone number 423-827-6377 (Target Telephone 3) during these calls.

9. On December 4, 2020, United States Magistrate Judge Christopher H. Steger issued a warrant authorizing the collection of prospective, real time location information associated with Target Telephone 3.

10. On December 18, 2020, the geolocation information pursuant to the warrant showed Target Telephone 3 traveling southbound from Chattanooga towards the Atlanta, Georgia

area. Shortly thereafter, no further geolocation information was available. You affiant believes that Target Telephone 3 was either turned off or destroyed.

***Location Information Warrant for TT-4, utilized by GENSEMER***

11. On November 24, 2020, at approximately 4:00 pm, Tennessee Highway Patrol Trooper Thomas was conducting a parking lot check of the Microtel Inn by Wyndham Chattanooga Hamilton Place at 7014 McCutcheon Road, Chattanooga, TN, 37421. Trooper Thomas noticed a motorcycle without displayed registration. Trooper Thomas further investigated and found that the ignition had been removed from the motorcycle. Trooper Thomas located the Vehicle Identification Number (VIN). A records check showed the motorcycle had been reported stolen in Hamilton County, Tennessee.

12. Hamilton County Sheriff's Office K9 Deputy Voss and K9 Deputy Stevens arrived to assist Trooper Thomas. While they were on scene, a white male exited the Microtel Inn. The white male was carrying a motorcycle helmet and wearing motorcycle riding apparel. Trooper Thomas attempted to speak to the male. The white male then fled on foot attempting to elude Deputies and Trooper Thomas. The white male was apprehended by Trooper Thomas and K9 Deputy Voss. The white male was identified as Adam Jackson BROBECK. BROBECK had a backpack on his person and when searched incident to arrest revealed hypodermic needles and empty baggies. During the foot pursuit, a white female exited the hotel and claimed to be BROBECK's girlfriend. The white female was identified as Amanda CONNER. CONNER stated she was unaware of what was going on and had just exited the Microtel Inn at the point Deputies and Trooper Thomas were pursuing BROBECK. Both CONNER and BROBECK were asked, and granted consent to search their room—room 246. During the search of the room, law enforcement located baggies, paraphernalia, digital scales, and approximately six ounce of suspected marijuana.

13. Your affiant and DEA TFO Naipo responded to the Microtel Inn and spoke with CONNER. CONNER advised she and BROBECK had been residing at the Microtel Inn for approximately two weeks. CONNER stated "Crystal" rented the hotel room for she and BROBECK. She stated she believed "Crystal's last name was "KILGORE" name and that the room was under that name. The front desk clerk informed your affiant that room 246 was rented to "Crystal MILLHOLLAND."

14. CONNER stated she is a heroin user and an occasional methamphetamine user. CONNER stated she used heroin earlier that day. CONNER stated that she had seen "Crystal" with two, gallon sized, zip-lock bags half way full of methamphetamine and what she estimated to be forty to sixty thousand dollars in stacks of U.S. Currency. CONNER stated that the stacks were in denominations of twenty, fifty, and hundred-dollar bills. CONNOR stated that "Crystal" has so much money that she has to use a money counter to count it.

15. CONNER stated "Crystal" had recently given her four ounces of methamphetamine for free. CONNER then sold the methamphetamine and "Crystal" allowed her to keep all the profit. CONNER stated she than began to purchase methamphetamine from "Crystal" and that she recently paid four hundred dollars for one ounce of methamphetamine. CONNOR stated she wanted wanted to purchase ounce quantities, but that "Crystal" advised her that she only dealt in kilo's not ounces.

16. CONNER stated that she knew "Crystal" to go to Atlanta, Georgia, to retrieve the methamphetamine and had on a previous occasion taken "LG" with her. Your Affiant knows LG to be Lyndsey Brooke GRAVITTE. CONNOR also stated that "Crystal" used to date a guy who she knew as "CURT" or "CURTIS," but stated that "Crystal" "CURT" or "CURTIS," had recently separated.

17. CONNOR provided 423-280-7312 (Target Telephone 4) as "Crystal's" telephone number. CONNOR was shown a photo of GENSEMER and stated it was who she referred to as "Crystal" or Crystal KILGORE.

18. On December 22, 2020, Hamilton County Sheriff's Office Detective Bailey located a jail call from Silverdale Detention Facility in Hamilton County, Tennessee. Silverdale Detention Facility utilizes ICSolutions Software for its inmate calls.. ICSolutions advises those participating in the call that all calls are recorded and can be monitored prior to connecting the call. Detective Bailey found that inmate Shaina HUGHES contacted telephone number 423-827-6377 (Target Telephone 3), utilized by GENSEMER, on December 17, 2020. During this call GENSEMER told HUGHES to contact GENSEMER at telephone number 423-280-7312 (Target Telephone 4). Detective Bailey located additional calls between between incarcerated individuals and Gensemer utilizing Target Telephone 4, which corroborated CONNOR's statements and indicated GENSEMER's continued involvement in methamphetamine trafficking.

19. On January 5, 2021, United States Magistrate Judge Christopher H. Steger issued a warrant authorizing the collection of prospective, real time location information associated with Target Telephone 4. Magistrate Judge Steger also issued an order authorizing the installation and use of a pen register and trap and trace device on TT4. Shortly thereafter, activity on Target Telephone 4 ceased. Your affiant believes that GENSEMER stopped utlizing Target Telephone 4. Based upon training and experience, your affiant knows that switching phones/phone numbers numerous times is common amongst drug traffickers.

*Target Telephone 6*

20. On January 05, 2021 at 6:01 pm, Shaina HUGHES made an outgoing phone call from Hamilton County Silverdale Facility to Target Telephone number **1-423-637-4994 (TT6),** utilized by GENSEMER. This systems list the owner of the telephone number to Crystal

MILLHOLLAND, at 3505 Anderson Pike, Signal Mountain, Tennessee, 37377, matching the subscriber information for TT6.

21. ICSoultions notifies all user prior to connecting the call that the call is recorded and can be monitored. Toward the end of the call HUGHES and GENSEMER discussed another inmate sending something to Vincent Curtis LEE. GENSEMER then began to laugh and told HUGHES that everyone thinks he (LEE) is the "plug" and GENSEMER laughs. HUGHES asked what GENSEMER is going to do if LEE is caught and GENSEMER stated "what ever will I do" then laughed.

22. Your Affiant believes based on training, experience, and knowledge of this investigation that GENSEMER is expressing to HUGHES that GENSEMER feels that it is funny because most believe that LEE is the "plug" or source of supply. GENSEMER then begins to condescend how LEE is thought as being the "plug" and mocks stating "whatever will I do." This indicates to your affiant that GENSEMER views herself as the "plug."

23. In February of 2021, a Source of Information (SOI) provided that Crystal GENSEMER and Reggie HELTON, were traveling to Atlanta, Georgia, to obtain multiple kilograms of methamphetamine to return to Chattanooga, Tennessee. The SOI provided that GENSEMER and HELTON utilizes the same source for methamphetamine in Atlanta, Georgia. The SOI expressed that GENSEMER and HELTON are their own independent distributors and obtain their own methamphetamine for distribution.

24. The SOI provided that he/she had witnessed GENSEMER purchase large amounts of heroin from Bruce SUTTON. The SOI provided that GENSEMER commonly provides SUTTON with methamphetamine in exchange of obtaining heroin.

25. The SOI stated that GENSEMER and HELTON are very close friends and commonly travel together to Atlanta, Georgia to obtain kilogram amounts of methamphetamine. The SOI stated that the methamphetamine is in Tupperware containers and is commonly kept with GENSEMER or within her residence at 6723 Dupre Road, Chattanooga, Tennessee.

26. The SOI provided that GENSEMER utilizes telephone number **1-423-637-4994 (TT6)**.

27. Your Affiant believes that based upon the aforementioned probable cause, that **Crystal Gayle GENSEMER** is using **Target Cell Phone #6/TT6** to facilitate their drug trafficking activities and in the furtherance of this drug conspiracy. I believe that obtaining the requested geo-location of **Target Cell Phone #6/TT6** through Verizon Wireless will allow investigators to locate the subject(s) utilizing the **Target Cell Phone #6/TT6** without jeopardizing the investigation and therefore investigators will more likely be successful in obtaining the necessary evidence to further their investigation. I further believe that the requested search warrant will enable investigators to more effectively collect evidence of the crimes being committed by the targeted organization, identify locations utilized by the organization to facilitate their criminal activities, identify co-conspirators and their locations.

28. In my training and experience, I have learned that Verizon Wireless is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including E-911 Phase II data, also known as GPS data or latitude-longitude data and cell-site data, also known as "tower/face information" or cell tower/sector records. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology

built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. [Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data.

29. Based on my training and experience, I know that Verizon Wireless can collect E-911 Phase II data about the location of the Target Cell Phones, including by initiating a signal to determine the location of the Target Cell Phones on Verizon Wireless network or with such other reference points as may be reasonably available.

30. Based on my training and experience, I know that Verizon Wireless can collect cell-site data about the Target Cell Phones. Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as Verizon Wireless typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

## AUTHORIZATION REQUEST

31.   Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

32.   I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 90 days after the collection authorized by the warrant has been completed. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the Target Cell Phones would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

33.   I further request that the Court direct Verizon Wireless to disclose to the government any information described in Attachment B that is within the possession, custody, or control of Verizon Wireless. I also request that the Court direct Verizon Wireless to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with Verizon Wireless services, including by initiating a signal to determine the location of the Target Cell Phones on Verizon Wireless network or with such other reference points

as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate Verizon Wireless for reasonable expenses incurred in furnishing such facilities or assistance.

34. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Target Cell Phones outside of daytime hours.

35. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Additionally, this Affidavit contains statements of co-conspirators in the investigation which, if revealed at this time, may jeopardize the safety of said individuals or result in witness tampering or intimidation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

Respectfully submitted,

_____
William B. Johnson
Task Force Officer
Drug Enforcement Administration

Subscribed and sworn to before me on _____March 3_____, 2021

_____
HONORABLE CHRISTOPHER H. STEGER
UNITED STATES MAGISTRATE JUDGE

THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| IN THE MATTER OF THE SEARCH OF: | ) | FILED UNDER SEAL |
| | ) | |
| THE CELLULAR TELEPHONE | ) | |
| ASSIGNED CALL NUMBER 423-637-4994 | ) | Case No. 1:21-mj-37 |
| INTERNATIONAL MOBILE SUBSCRIBER | ) | |
| IDENTIFIER 311480616554096 (TT-6) | ) | |

## ATTACHMENT A

### Property to Be Searched

1. The cellular telephones assigned call number 1-423-637-4994 with International Mobile Subscriber Identifier 311480616554096 with listed subscriber as Crystal Gayle MILLHOLLAND, 3505 Anderson Pike, Signal Mountain Tennessee, utilized **by Crystal Gayle GENSEMER ("Target Cell Phone #6/TT6")**, whose service provider is Verizon Wireless, a wireless telephone service provider whose legal compliance center is headquartered at 180 Washington Valley Road, Bedminster, NJ, 07921.

2. Records and information associated with the **Target Cell Phone #6/TT6** that are within the possession, custody, or control of Verizon Wireless: including information about the location of the cellular telephones if they are subsequently assigned a different call number.

THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE

IN THE MATTER OF THE SEARCH OF: )           FILED UNDER SEAL
                                                              )
THE CELLULAR TELEPHONE                       )
ASSIGNED CALL NUMBER 423-637-4994 )           Case No. 1:21-mj-37
INTERNATIONAL MOBILE SUBSCRIBER  )
IDENTIFIER 311480616554096 (TT-6)           )
                         **ATTACHMENT B**

**Particular Things to be Seized**

I.     **Information to be Disclosed by the Provider**

All information about the location of the **Target Cell Phone #6/TT6** described in Attachment A for a period of thirty days, during all times of day and night. "Information about the location of the **Target Cell Phone #6/TT6**" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephones described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of Verizon Wireless. Verizon Wireless is required to disclose the Location Information to the government. In addition, Verizon Wireless must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with Verizon Wireless's services, including by initiating a signal to determine the location of the **Target Cell Phone #6/TT6** on Verizon Wireless's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the

Page 1 of 2

government. The government shall compensate Verizon Wireless's for reasonable expenses incurred in furnishing such facilities or assistance.

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

II. **Information to Be Seized by the Government**

**IF LOCATION INFORMATION IS EVIDENCE OF A CRIME:**

All information described above in Section I that constitutes evidence of violations of Title 21, United States Code, Sections 841(a)(1), 846, and 843(b) involving **Crystal Gayle GENSEMER** or unidentified subject(s).

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.